**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

SCOTT PHILLIP LEWIS,

                               Plaintiff,

         v.

                                        No. 8:24-CV-00098

EILEEN WALSH,                         (GTS/CFH)

                               Defendant.

_____

**APPEARANCES:**

Scott Phillip Lewis
1936 Saranac Avenue
#3, PMB 411
Lake Placid, New York 12946
Plaintiff pro se

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

### I. In Forma Pauperis

Plaintiff pro se Scott Lewis ("plaintiff")[1] purported to commence this action on

January 21, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this

---

[1] The undersigned notes that plaintiff is a particularly litigious individual who has filed numerous other actions that are presently pending in this District, as well as others. See, e.g., Lewis v. Town of Elizabethtown, 8:24-CV-00535 (AMN/DJS) (N.D.N.Y. filed Apr. 18, 2024), Dkt. No. 5 (Report-Recommendation recommending dismissal pending review); Lewis v. Adirondack Med. Ctr., 1:24-CV-00376 (BKS/TWD) (N.D.N.Y. filed Mar. 19, 2024), Dkt. No. 4 (Report-Recommendation recommending dismissal pending review); Lewis v. Paymaster Payroll Sys., Inc., 8:24-CV-00121 (MAD/DJS) (N.D.N.Y. filed Jan. 25, 2024), Dkt. No. 9 (dismissing complaint and entering judgment in favor of the defendants); Lewis v. Essex Cnty., 8:24-CV-00100 (MAD/CFH) (N.D.N.Y. filed Jan. 19, 2024); Lewis v. Despos, LLC, 8:24-CV-00079 (AMN/CFH) (N.D.N.Y. filed Jan. 17, 2024); Lewis v. R. L. Vallee, Inc., 8:24-CV-00069 (AMN/DJS) (N.D.N.Y. filed Jan. 16, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Affiliated Enter. Sol., LLC, 8:24-CV-00061 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Redline Hockey, LLC, 8:24-CV-00068 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Citizens

Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP").  See Dkt. No. 2.  The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2]

## II. Initial Review

### A. Legal Standard

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[3]  "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action."  Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they

---

United, Inc., 8:24-CV-00029 (TJM/DJS) (N.D.N.Y. filed Jan. 8, 2024), Dkt. No. 22 (dismissing complaint with leave to amend); Lewis v. Adirondack Med. Ctr., 8:24-CV-00027 (BKS/DJS) (N.D.N.Y. filed Jan. 7, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Onondaga Cnty., 8:24-CV-00013 (GTS/DJS) (N.D.N.Y. filed Jan. 3, 2024), Dkt. No. 11 (Report-Recommendation recommending dismissal pending review); Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 10 (Report-Recommendation recommending partial dismissal pending review); Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. Williamson Cnty., 1:24-CV-00461 (ADA) (W.D. Tex. filed Apr. 25, 2024); Lewis v. Williamson Cnty., 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024); Lewis v. Williamson Cnty., 1:21-CV-00074 (ADA/SH) (W.D. Tex. filed Jan. 25, 2021), Dkt. No. 152 (granting summary judgment in favor of the defendants and dismissing the plaintiff's claims with prejudice).

[2] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

[3] These requirements apply to non-prisoner pro se litigants.  See N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. §1915(e)(2) and 28 U.S.C. §1915A when an application to proceed in forma pauperis is filed.").

suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam)

(internal quotation marks omitted).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to special solicitude, that a pro se litigant's
> submissions must be construed liberally, and that such
> submissions must be read to raise the strongest arguments
> that they suggest.  At the same time, our cases have also
> indicated that we cannot read into pro se submissions claims
> that are not consistent with the pro se litigant's allegations,
> or arguments that the submissions themselves do not
> suggest, that we should not excuse frivolous or vexatious
> filings by pro se litigants, and that pro se status does not
> exempt a party from compliance with relevant rules of
> procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v.

Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to

count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a

court is obligated to construe his pleadings liberally.") (internal quotation marks and

citations omitted).  Thus, the Court is not required to accept unsupported allegations

that are devoid of sufficient facts or claims.  Although detailed allegations are not

required at the pleading stage, the complaint must still include enough facts to provide

the defendants with notice of the claims against them and the grounds upon which

these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell

Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Ultimately, the plaintiff must plead

"enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S.

at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.").

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]."  Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)).[4]  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include "(1) a short and plain statement of the grounds for the court's jurisdiction . . .  and (3) a demand for the relief sought . . . ."  FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  FED. R. CIV. P. 8(d).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

---

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted).  A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Id. (citations omitted).

### B. Plaintiff's Complaint

Plaintiff alleges that, "[o]n December 29, 2021, [he] was involved in a traffic stop" in Solvay, New York.  Compl. at 2, ¶5.[5]  "Plaintiff was issued six (6) infractions namely an inspection violation, turn signal violation, safety glass violation, insurance violation, registration violation and aggravated unlicensed operator in the third degree."  Id. at 2, ¶6.  "Aggravated unlicensed operator is a misdemeanor in the State of New York while the other five (5) charges were traffic violations."  Id.

"On January 20, 2022, the New York State Department of Motor Vehicles ('DMV') issued a Restoration Notice Ordering that [p]laintiff's suspension of driving privileges had been rescinded effective December 29, 2021[.]"  Compl. at 2, ¶7.  "Plaintiff wished

---

[5] Citations are to the pagination generated by CM/ECF, located in the header of each page.

to exercise his Constitutional right to a jury trial for the[se] charges"; so, "[o]n or around May 2, 2022, [p]laintiff hired Eileen Walsh ('Ms. Walsh'), an attorney believed to be admitted to the New York State Bar Association."  Id. at 2, ¶¶8-9.  "Plaintiff voiced his desire to exercise his Constitutional right to a jury trial on the onset of Ms. Walsh's representation."  Id. at 2, ¶9.

On May 7, 2022, Ms. Walsh met with Frank Pelosi, an Assistant District Attorney at the Onondaga County District Attorney's Office.  See Compl. at 3, ¶18.  "[T]here was a plea offer from Mr. Pelosi to drop many charges, except for an unlicensed operator charge."  Id. at 3, ¶19.  "Ms. Walsh knew upon being hired that [p]laintiff wished to go to jury trial if the State of New York did not want to drop all charges."  Id. at 3, ¶20.  "Thus, on May 7, 2022, Ms. Walsh and Mr. Pelosi, representing the Onondaga County District Attorney's Office, had a 'meeting of the minds.'"  Id. at 3, ¶21.  "Plaintiff was not made aware of Ms. Walsh and Mr. Pelosi's meeting and subsequent plea offer immediately."  Id. at 4, ¶22.  "Instead, on or around June 2, 2022, [p]laintiff received a phone call from [a Village of Solvay police officer] stating there was a warrant out for [p]laintiff's arrest, despite a May 7, 2022 'meeting of the minds' between [p]laintiff's representation and Assistant District Attorney Frank Pelosi."  Id. at 4, ¶23.

"On or around June 6, 2022, [p]laintiff was put in handcuffs in the Village of Lake Placid, New York and notified there was a warrant out for his arrest regarding the Village of Solvay court matters stemming from [p]laintiff's December 29, 2021 traffic stop."  Compl. at 2, ¶10.  "Plaintiff was ultimately released but issued a ticket for unlicensed operator by Village of Lake Placid Police."  Id. at 4, ¶25.  "The unlicensed operator charge was ultimately dismissed during a bench trial."  Id. at 4, ¶26.

"Ms. Walsh did not communicate the plea offer or discussions she had with Assistant District Attorney Frank Pelosi prior to early July 2022." Compl. at 5, ¶33. "On or around July 6, 2022, Ms. Walsh filed a Motion to Withdraw as attorney in the Village of Solvay Court after [p]laintiff refused to accept a plea deal offered by Onondaga County District Attorney's Office." Id. at 2, ¶11. "Ms. Walsh's representation resulted in [p]laintiff being erroneously put in handcuffs, exacerbating symptoms of PTSD and ADHD, while she ultimately withdrew before trial." Id. at 6, ¶47.

"On or around July 14, 2022, [p]laintiff elected to proceed pro se after Ms. Walsh did not appear at [p]laintiff's hearing regarding Ms. Walsh's withdrawal of representation." Compl. at 3, ¶13. "On or around October 27, 2022, all charges were dismissed against [p]laintiff." Id. at 3, ¶14.

## C. Analysis

Liberally construing plaintiff's complaint, he brings claims against Ms. Walsh under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3). See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'") (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

### 1. § 1983 Claims

Plaintiff contends that Ms. Walsh violated his constitutional rights under the Fourth, Sixth, and Fourteenth Amendments. See Compl. at 3-6. However, "[t]o maintain a [§] 1983 action, a plaintiff must show that the defendant (1) acted under color

of state law (2) to deprive the plaintiff of a right arising under the Constitution or federal law." Mugabo v. Wagner, No. 22-CV-930-A, 2024 WL 1621534, at *4 (W.D.N.Y. Apr. 15, 2024) (citing Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993)). "The traditional definition of acting under color of state law requires that the defendant . . . exercise[ ] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49 (1988) (internal quotation marks and citation omitted). "Because the United States Constitution regulates only the Government, not private parties, [with respect to a claim brought under § 1983,] a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" Flagg v. Yonkers Sav. & Loan Ass'n, 396 F.3d 178, 186 (2d Cir. 2005) (quoting United States v. Int'l Brotherhood of Teamsters, 941 F.2d 1292, 1295 (2d Cir. 1991)).

"Private parties generally are not state actors and therefore are not usually liable under [§] 1983." Yi Sun v. Saslovsky, No. 1:19-CV-10858 (LTS), 2020 WL 6828666, at *7 (S.D.N.Y. Aug. 6, 2020) (citing Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir. 2013)); see Basile v. Connolly, 538 F. App'x 5, 7 (2d Cir. 2013) (summary order) ("[P]rivate individuals . . . cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law."). "A private party's actions can be considered state action in three situations":

> (1) the private party acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) the private party willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the state has delegated a public function to the private party (the "public function" test).

8

Rogers v. City of New Rochelle, No. 1:19-CV-0479 (CM), 2019 WL 5538031, at *2 (S.D.N.Y. Oct. 25, 2019) (quoting Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012)).  "The fundamental question under each test is whether the private party's challenged actions are 'fairly attributable' to the State."  Id. (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)).  "[A] State normally can be held responsible for a private decision . . . when it has . . . provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."  Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (citations omitted).  The State's "[m]ere approval of or acquiescence in the initiatives of a private party[, however,] is not sufficient to justify holding the State responsible for those initiatives."  Id. at 1004-05.

"Absent special circumstances suggesting concerted action between an attorney and a state representative," "a private attorney's legal representation of a private person, however, does not constitute state action for the purpose of stating a claim under [§] 1983 against that attorney, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender."  Masri v. Liebowitz, No. 1:24-CV-1284 (LTS), 2024 WL 1639904, at *9 (S.D.N.Y. Apr. 15, 2024) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970), and Bourdon v. Loughren, 386 F.3d 88, 90 (2d Cir. 2004)); see O'Donoghue v. United States Soc. Sec. Admin., 828 F. App'x 784, 787 (2d Cir. 2020) (summary order) ("Private attorneys are generally not 'state actors' for purposes of § 1983.") (citing Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997)); see also Shorter v. Rice, No. 12-CV-0111 (JFB/ETB), 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the

color of state law merely by virtue of their position."); Manko v. Steinhardt, No. 11-CV-5430 (KAM/LB), 2012 WL 213715, at *4 (E.D.N.Y. Jan. 24, 2012) (collecting cases and noting that "[i]t is well-settled that private attorneys and law firms . . . do not act under color of state law and are not state actors for purposes of [§] 1983 simply by virtue of their state-issued licenses to practice law").

Here, plaintiff alleges that Ms. Walsh "is an attorney believe to be admitted to the New York State Bar," who represented him in proceedings before the Solvay Village Court.  Compl. at 1, ¶2; 2, at ¶¶9-10.  Plaintiff argues that Ms. Walsh violated his Fourth Amendment rights because her representation led to an "erroneous warrant" and his "being placed in handcuffs and detained for a period of time."  Id. at 4, ¶29.  Plaintiff also claims that Ms. Walsh violated his Sixth Amendment right to a jury trial because she "thought that she could gaslight [him] and tricked him into signing a plea agreement."  Id. at 6.  Plaintiff further contends that Ms. Walsh "deprived [him] of the equal protection of the laws" in violation of the Fourteenth Amendment.  Id. at 4, ¶31.  However, plaintiff alleges no facts showing that Ms. Walsh acted "using the coercive power of the state or is controlled by the state," "willfully participate[d] in joint activity with the state or . . . [is] entwined with state policies," or that "the state has delegated a public function to [her]."  Rogers, 2019 WL 5538031, at *2; see Schoch v. Scattaretico-Naber, No. 7:24-CV-2294 (CS), 2024 WL 2221383, at *4-5 (S.D.N.Y. May 16, 2024) (dismissing the plaintiff's § 1983 claims against his private attorneys because the plaintiff failed to establish that the attorneys acted as state actors); see also Jones v. Roth, No. 23-CV-9831 (LTS), 2024 WL 54160, at *3 (S.D.N.Y. Jan. 2, 2024) ("As Defendant Roth is a private attorney who is not alleged to work for any state or other

government body, Plaintiff cannot state a claim against her under [§] 1983."); <u>Eggsware v. Doe</u>, No. 1:22-CV-54 (BKS/CFH), 2022 WL 827640, at *5 (N.D.N.Y. Feb. 7, 2022) (dismissing the plaintiff's § 1983 claims where "there is nothing in the complaint to suggest that any of the potential wrongful actors are 'state actors' or that they are 'collaborating' with state actors"), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2022 WL 823646 (N.D.N.Y. Mar. 18, 2022).

Moreover, even if, arguendo, plaintiff sufficiently alleged or could amend to allege that Ms. Walsh was acting under the color of state law, he has failed to plead any plausible facts that suggest Ms. Walsh violated his Fourth, Sixth, or Fourteenth Amendment rights. <u>See</u> <u>generally</u> Compl.  First, plaintiff contends Ms. Walsh violated his Fourth Amendment rights due to the "erroneous warrant" being issued.  Compl. at 4, ¶29.  However, he does not explain how Ms. Walsh specifically contributed to the violation of these rights.  <u>See</u> <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").  To the extent plaintiff suggests that Ms. Walsh's failure to notify him "immediately" of the plea offer violated his Fourth Amendment rights,[6] this is essentially an ineffective assistance of counsel claim, which must fail because "[a] civil action brought pursuant to

---

[6] Moreover, "[c]ourts . . . have repeatedly held that the issuance of a traffic ticket or court summons alone does not constitute a seizure under the Fourth Amendment for the purposes of establishing a false arrest or malicious prosecution claim."  <u>LoSardo v. Ribaudo</u>, No. 14-CV-6710 (JS/GRB), 2015 WL 502077, at *5 (E.D.N.Y. Feb. 5, 2015).  Indeed, "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." <u>Burg v. Gosselin</u>, 591 F.3d 95, 98 (2d Cir. 2010); <u>see</u> <u>Martinez v. Carr</u>, 479 F.3d 1292, 1299 (10th Cir. 2007) ("[T]he mere issuance of a citation requiring presence at future legal proceedings does not qualify as a constitutional 'seizure'").

42 U.S.C. § 1983 is not the appropriate vehicle to raise [such] a claim[.]"[7]  Compl. at 4,

¶¶22, 29; Murphy v. Feliciano, No. 3:17-CV-269 (VLB), 2017 WL 3699353, at *7 (D.

Conn. May 31, 2017) (citing Bourdon, 386 F.3d at 90), adhered to on reconsideration,

2017 WL 3698490 (D. Conn. Aug. 25, 2017); see Telfair v. Tandy, No. CV-08-731

(WJM), 2008 WL 4661697, at *8 (D.N.J. Oct. 20, 2008) ("[E]ven if [the plaintiff] had

pleaded facts establishing that his former attorney was acting under color of state law,

any claim concerning a violation of [the] plaintiff's right to effective assistance of counsel

must first be raised in [the plaintiff]'s ongoing . . . criminal case; or to the extent that [the

plaintiff]'s criminal trial is no longer pending, . . . any claim of ineffective assistance of

counsel in this regard must first be raised by direct appeal or other available collateral

review . . . before he can bring a claim for damages in a civil law suit.").

Second, plaintiff appears to argue that he has a Sixth Amendment right to a jury

trial for his five traffic offenses and his one misdemeanor charge of aggravated

unlicensed operator in the third degree, and that Ms. Walsh's conduct in pressuring or

convincing him to enter into a plea agreement violated this right.  See Compl. at 2-6.

However, although the Sixth Amendment guarantees the right to a jury trial, "[t]he right

does not exist . . . for the trial of 'petty' offenses."  United States v. Garner, 874 F.2d

1510, 1511 (11th Cir. 1989) (quoting District of Columbia v. Clawans, 300 U.S. 617,

624-25 (1937)); see Blanton v. City of N. Las Vegas, 489 U.S. 538, 543-44 (1989)

(holding that the Sixth Amendment does not guarantee a jury trial on petty offenses,

which presumptively includes all crimes whose maximum sentence of incarceration is

below six months).  Plaintiff has not claimed that his offense carried a maximum

---

[7] "[L]egal malpractice does not constitute a constitutional violation."  Bender v. City of New York, No. 09-CV-3286 (BSJ), 2011 WL 4344203, at *14 (S.D.N.Y. Sept. 14, 2011).

sentence of incarceration above six months, and, thus, has not established that Sixth Amendment protections apply to his traffic infraction proceedings in the Solvay Village Court.  See Sheng v. City of N.Y., No. 05-CV-1118 (RRM/VVP), 2009 WL 6871132, at *7 (E.D.N.Y. June 26, 2009) (rejecting "the notion that parking ticket hearings are criminal prosecutions and covered under the Sixth Amendment" because "the application of the full protections of the Sixth Amendment to a hearing on a parking ticket, including a jury, right of confrontation, and the assistance of counsel, would be absurd"), report and recommendation adopted, 2010 WL 3744428 (E.D.N.Y. Sept. 20, 2010); see also N.Y. CRIM. PROC. LAW § 1.20 ("'Petty offense' means a violation or a traffic infraction").

Lastly, plaintiff vaguely asserts that Ms. Walsh deprived him of "the equal protection of the law based on the discriminatory conduct towards [his] mental impairments and disabilities" in violation of the Fourteenth Amendment.  Compl. at 5, ¶34.  However, to state an equal protection claim, a plaintiff must allege facts showing that the plaintiff was treated differently from similarly-situated individuals and that the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)).  "To state a viable claim for denial of equal protection as a member of an identifiable class, a plaintiff generally must allege 'purposeful discrimination . . . directed at [the] identifiable or suspect class.'"  Cox v. (DOCCS) NYS Dep't of Corr., 673 F. Supp. 3d 174, 186 (N.D.N.Y. 2023) (quoting Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995)).

Although plaintiff suggests that Ms. Walsh treated him differently on account of his ADHD and PTSD symptoms or diagnoses, he has not offered any non-conclusory factual allegations to support a Fourteenth Amendment equal protection claim.  See Compl. at 4-5.  Specifically, plaintiff states that he struggles with ADHD and PTSD, yet there are no facts to suggest that Ms. Walsh was aware of his diagnoses, let alone motivated by them.  See id. at 4, ¶30; see also Thomas v. Pingotti, No. 9:17-CV-0300 (GTS/DEP), 2017 WL 3913018, at *7 (N.D.N.Y. Sept. 6, 2017) ("Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause.").  "Such naked assertions devoid of further factual enhancement are insufficient to give rise to a plausible entitlement to relief."  Doe v. Fenchel, 837 F. App'x 67, 68 (2d Cir. 2021) (summary order) (internal quotation marks and citations omitted).

Plaintiff also summarily asserts that Ms. Walsh "conspired" against him to deprive him of his constitutional rights.  Compl. at 5, ¶37.  It is true that "[e]ven a private individual . . . may be liable under § 1983 if [she] conspired with state actors." Cunningham v. Fisch, No. 1-CV-1123 (DC), 2001 WL 1313518, at *3 (S.D.N.Y. Oct. 26, 2001) (citing Adickes, 398 U.S. at 152, and Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)).  However, to sufficiently allege "a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private

entity." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (citing Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992)).

Although plaintiff vaguely asserts that Ms. Walsh and Mr. Pelosi "had a 'meeting of the minds,'" his "conclusory allegations are insufficient to state a § 1983 [conspiracy] claim against [Ms. Walsh]." Compl. at 3; Ciambriello, 292 F.3d at 324; see Davis v. Saab-Dominguez, No. 23-CV-6658 (PKC/AYS), 2023 WL 7091905, at *3 (E.D.N.Y. Oct. 26, 2023) (dismissing the plaintiff's § 1983 conspiracy claims against the private attorney defendants where the plaintiff "fail[ed] to plead any plausible facts that suggest the [d]efendants were involved" in a conspiracy with state actors). It is, therefore, recommended that plaintiff's § 1983 claims against Ms. Walsh be dismissed.

### 2. § 1985(3) Claim

Plaintiff also seeks to bring a conspiracy claim under 42 U.S.C. § 1985(3), asserting that Ms. Walsh conspired against him to violate his Fourth, Sixth, and Fourteenth Amendment rights. See Compl. at 3-6. To state a conspiracy claim under 42 U.S.C. § 1985(3),

> a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). "In addition, 'there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Syfert v. City of Rome, No. 6:17-CV-0578 (GTS/TWD), 2018 WL 3121611, at *6 (N.D.N.Y. Feb. 12, 2018) (quoting Griffin v. Breckenridge, 403 U.S. 88,

102 (1971)), report and recommendation adopted, 2018 WL 2316681 (N.D.N.Y. May 22, 2018), aff'd, 768 F. App'x 66 (2d Cir. 2019) (summary order).

"The pleading standard for a conspiracy claim is demanding."  Rother v. NYS Dep't of Corr. & Cmty. Supervision, 970 F. Supp. 2d 78, 103 (N.D.N.Y. 2013) (citing Kiryas Joel Alliance v. Vill. of Kiryas Joel, 495 F. App'x 183, 190 (2d Cir. 2012) (summary order), and Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999)).  "In order to maintain an action under [§] 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003) (internal quotation marks and citations omitted).  "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."  Walker v. O'Connor, No. 1:22-CV-581 (DNH/TWD), 2022 WL 2341420, at *4 (N.D.N.Y. June 29, 2022) (citation omitted), report and recommendation adopted, 2022 WL 2805462 (N.D.N.Y. July 18, 2022).  "Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation."  Id. (citing Oliver v. Penny, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (summary order) (concluding that the plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation")).

Plaintiff claims that (1) Ms. Walsh "conspired" against him; (2) in order "to deprive [him] of the equal protection of the law"; (3) "by allowing the Village of Solvay to issue false warrants" and by "trick[ing plaintiff] into signing a plea agreement" instead of

proceeding with a jury trial; (4) which caused "mental injuries[,] including an increase in emotional distress and symptoms of PTSD and ADHD[.]"  Compl. at 4-6.  However, plaintiff fails to sufficiently allege that Ms. Walsh conspired with others—state actors—to engage in unlawful conduct against him.  See generally id.  Although plaintiff contends that "on May 7, 2022, Ms. Walsh and Mr. Pelosi . . . had a 'meeting of the minds,'" plaintiff does not explain what this "meeting of the minds" entailed.  Id. at 3, at ¶21; see Webb, 340 F.3d at 110-11 ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail.").  Notably, plaintiff does not claim that Ms. Walsh and Mr. Pelosi specifically agreed to engage in unlawful conduct against him.  See Walker, 2022 WL 2341420, at *4 ("The general allegation that Dr. O'Connor acted in concert with others, without more, does not give rise to the inference that she agreed to engage in unlawful conduct against Plaintiff."); see also Wilson v. Cnty. of Onondaga, No. 5:20-CV-1489 (GTS/TWD), 2021 WL 5971316, at *9 (N.D.N.Y. Apr. 21, 2021) ("Notably absent from the complaint are specific facts plausibly indicating an agreement between the individual Defendants and/or to violate Plaintiff's constitutional rights.") (citing Jae Soog Lee v. Law Off. of Kim & Bae, PC, 530 F. App'x 9, 10 (2d Cir. 2013) (summary order) (finding no conspiracy claim where the plaintiff did not allege an agreement)), report and recommendation adopted, 2021 WL 5967130 (N.D.N.Y. Dec. 16, 2021).

Moreover, "[p]rosecutors are immune from civil suit for damages in their individual capacities for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are intimately associated

with the judicial phase of the criminal process."  Linder v. Oneida Cnty. Dist. Att'y Off.,
No. 6:23-CV-01061 (GTS/TWD), 2023 WL 6810098, at *3 (N.D.N.Y. Oct. 16, 2023)
(citing Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013), and Imbler v.
Pachtman, 424 U.S. 409, 430 (1976)), report and recommendation adopted, 2023 WL
8780112 (N.D.N.Y. Dec. 19, 2023).  As relevant here, "[a] prosecutor is absolutely
immune from a suit for damages based on" "plea bargaining[.]"  Casertano v. Kerwin,
No. 3:09-CV-1853 (CFD), 2010 WL 3257643, at *2 (D. Conn. Aug. 11, 2010) (explaining
that "negotiations pertaining to a plea bargain are intimately associated with the judicial
phase of the criminal process") (internal quotation marks and citations omitted).  Thus,
to the extent that plaintiff may seek to name Assistant District Attorney Pelosi as Ms.
Walsh's co-conspirator, Mr. Pelosi would be protected by prosecutorial immunity.  See
id.  Accordingly, because Ms. Walsh's only named co-conspirator would be protected by
prosecutorial immunity, she "therefore had no state actor with whom [she] could have
conspired, rend[er]ing [p]laintiff's conspiracy claim deficient as a matter of law."
Murdock v. Legal Aid Soc'y, No. 14-CV-0508 (JS/SIL), 2015 WL 94245, at *3 (E.D.N.Y.
Jan. 6, 2015) (citing Delarosa v. Serita, No. 14-CV-737 (MKB), 2014 WL 1672557, at *4
(E.D.N.Y. Apr. 28, 2014) (dismissing the plaintiff's conspiracy claim because the
prosecutor was immune from suit and the criminal defense attorney therefore had no
"state actors with whom [he] could have conspired to deprive [the p]laintiff of his
Constitutional rights")); see Pinaud v. Cnty. of Suffolk, 52 F.3d 1139, 1148 (2d Cir.
1995) ("[S]ince absolute immunity covers virtually all acts, regardless of motivation,
associated with [the prosecutor's] function as an advocate, when the underlying activity

at issue is covered by absolute immunity, the plaintiff derives no benefit from alleging a conspiracy.") (internal quotation marks and citations omitted).

Plaintiff also does not contend that Ms. Walsh entered into an agreement with any other state actor to engage in unlawful conduct against plaintiff.  See Wyche v. Niskayuna Cent. Sch. Dist., No. 1:18-CV-567 (LEK/CFH), 2018 WL 3105065, at *3 (N.D.N.Y. June 22, 2018) (recommending dismissal of the plaintiff's § 1985 conspiracy claim where the "plaintiff identifie[d] no other individuals with whom [the defendant] allegedly conspired"), report and recommendation adopted, 2018 WL 3730857 (N.D.N.Y. Aug. 6, 2018); see also Hanley v. Nassau Health Care Corp., No. 10-CV-3884 (SJF/AKT), 2013 WL 3364375, at *8 (E.D.N.Y. July 3, 2013) ("Aside from her conclusory allegations, plaintiff has failed to allege any facts that support the existence of a conspiracy. . . . Accordingly, plaintiff's [§] 1985(3) claim is dismissed."); Marks One Car Rental, Inc. v. Auto Club Grp. Ins. Co., 55 F. Supp. 3d 977, 989 (E.D. Mich. 2014) ("Absent a co-conspirator, there can be no conspiracy.").

"[E]ven if [p]laintiff sufficiently pleaded the existence of a conspiracy, he has failed to allege that the conspiracy was 'motivated by some . . . invidious discriminatory motive.'"  Abadi v. Am. Airlines, Inc., No. 23-CV-4033 (LJL), 2024 WL 1346437, at *27 (S.D.N.Y. Mar. 29, 2024) (quoting Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007)).  Plaintiff claims that he "was diagnosed with ADHD on or around January 10, 2022," and he "exhibited symptoms of PTSD which was not officially diagnosed until May 2023."  Compl. at 4, ¶30.  Plaintiff contends that Ms. Walsh "deprived [him] the equal protection of the law based on the discriminatory conduct towards [his] mental impairments and disabilities."  Id. at 5, ¶34.  However, as

discussed, plaintiff fails to advance any non-conclusory factual allegations suggesting that Ms. Walsh was motivated by an animus against individuals with mental health diagnoses.[8]  See discussion supra Subsection II.C.1; see also Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 271-72 (1993) ("Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of,' its adverse effects upon an identifiable group.") (quoting Pers. Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979)).

Finally, plaintiff has not sufficiently alleged an underlying constitutional violation. See generally Compl.; see also Syfert v. City of Rome, No. 6:17-CV-0578 (GTS/TWD), 2017 WL 3405521, at *12 (N.D.N.Y. Aug. 7, 2017) ("[C]onspiracy claims under [§] 1985 fail[ ] as a matter of law where there is no underlying constitutional violation.") (internal quotation marks and citation omitted), report and recommendation adopted, 2017 WL 5195230 (N.D.N.Y. Nov. 9, 2017).  Plaintiff conclusorily asserts that Ms. Walsh violated his Fourth, Sixth, and Fourteenth Amendment rights, but his complaint lacks factual allegations to support this claim.  As discussed, plaintiff has failed to demonstrate that

---

[8] The undersigned notes that "[t]here is some division of authority regarding whether [§] 1985(3) protects against discrimination based on [mental] disability."  Abadi, 2024 WL 1346437, at *24 (citing Bartell v. Lohiser, 215 F.3d 550, 559 (6th Cir. 2000) (holding that § 1985(3) "does not cover claims based on disability-based discrimination or animus"), and D'Amato v. Wisconsin Gas Co., 760 F.2d 1474, 1486 (7th Cir. 1985) (holding that the disabled are not a class under § 1985(3) because "[t]he handicapped as a class differ radically from the racially-based animus motivating the Ku Klux Klan and white supremacists against which Congress directed [§] 1985(3)")) (additional citations omitted).  However, "[t]he Second Circuit stated in 1982 that the claim that the 'mentally retarded' were a class protected by [§] 1985(3) was 'colorable[,]'" and this "decision has never been overruled or questioned by the Second Circuit."  Id. at *24 (citing People by Abrams v. 11 Cornwell Co., 695 F.2d 34, 42 (2d Cir. 1982), vacated in part on other grounds, 718 F.2d 22 (2d Cir. 1983)); see Lalonde v. City of Ogdensburg, 662 F. Supp. 3d 289, 320 (N.D.N.Y. 2023).  Nevertheless, the undersigned "need not decide in this case whether the [mentally] disabled are a qualifying class under [§] 1985(3)," or whether plaintiff's conditions even fall within the Second Circuit's assessment, as plaintiff's "[c]omplaint contains no well-pleaded allegations to support the conclusion of conspiracy, or an agreement to violate a federal right, or invidious discrimination."  Abadi, 2024 WL 1346437, at *25.

20

Ms. Walsh acted under the color of state law, or engaged in any state action, when she allegedly injured him.  See discussion supra Subsection II.C.1; see also Ciambriello, 292 F.3d at 323 ("[T]he United States Constitution regulates only the Government, not private parties."); Osipova v. Dinkins, 907 F. Supp. 94, 96 (S.D.N.Y. 1995) ("Where, as here, a private party is charged with a constitutional violation, the plaintiff must prove state action.  A plaintiff must establish state action by showing that the private party acted together with, or obtained significant aid from, state officials or that her conduct is otherwise attributable to the state.").

Plaintiff has accordingly failed to state a claim for relief under § 1985(3).  See Dougal v. Lewicki, No. 1:23-CV-1167 (DNH/CFH), 2024 WL 1959668, at *5 (N.D.N.Y. May 2, 2024) ("As plaintiff fails to state a valid constitutional violation, his claim that defendants Lewicki and others conspired to violate his Fourth, Fifth, and Fourteenth Amendment rights also must fail because there can be no conspiracy to violate an individual's constitutional right if there were no underlying constitutional violations.") , report and recommendation adopted in part, 2024 WL 2350003 (N.D.N.Y. May 23, 2024).  It is, therefore, recommended that plaintiff's § 1985(3) claim be dismissed.

### III. Leave to Amend

"As a general matter, the district court has discretion whether or not to grant leave to amend, and its decision is not subject to review on appeal except for abuse of discretion."  Elleby v. Martucello, No. 9:16-CV-1335 (MAD/DEP), 2018 WL 3769965, at *4 (N.D.N.Y. Aug. 9, 2018) (quotation marks omitted) (quoting Shomo v. New York, 374 F. App'x 180, 182 (2d Cir. 2010) (summary order)).  "Generally, leave to amend should

be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (citations and quotation marks omitted). "A pro se complaint should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation and quotation marks omitted). "However, 'leave to amend a complaint may be denied when amendment would be futile.'" Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (quoting Tocker v. Philip Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006)). Futility is present when "[t]he problem with [plaintiff]'s causes of action is substantive [such that] better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

Plaintiff has failed to contend that Ms. Walsh acted under the color of state law when she allegedly injured him. See, e.g., Dougal v. Lewicki, No. 1:23-CV-1167 (DNH/CFH), 2023 WL 6430586, at *6 (N.D.N.Y. Oct. 3, 2023) (dismissing the plaintiff's § 1983 claim against his defense attorney with prejudice and without leave to amend because the defense attorney was not a state actor), report and recommendation adopted, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023). Although very unlikely, it is possible that plaintiff may, if given an opportunity to amend, venture a plausible argument that Ms. Walsh, otherwise a private actor, acted under the color of state law. See Jeanty v. Sciortino, 669 F. Supp. 3d 96, 113 (N.D.N.Y. 2023) ("To act under color of state law, it is enough that the private party is a willful participant in joint action with

the State or its agents.") (internal quotation marks and citations omitted),

reconsideration denied sub nom. Jeanty v. Bagley, 2023 WL 5175832 (N.D.N.Y. Aug.

11, 2023); see also Cheruvu v. HealthNow New York, Inc., No. 22-1993, 2023 WL

3443362, at *2 (2d Cir. May 15, 2023) ("To plead that a private party was 'a willful

participant in joint activity with the [s]tate,' [the plaintiff] must plausibly allege that the

private party and the state 'share some common goal to violate the plaintiff's rights.'")

(quoting Betts v. Shearman, 751 F.3d 78, 85 (2d Cir. 2014)).  Nevertheless, plaintiff has

failed to plausibly allege that Ms. Walsh, even if she were acting under the color of state

law, violated any constitutional right sufficient to state either a § 1983 or § 1985(3)

claim.  See supra Subsection II.C.1; see also Fletcher v. Vill. of Lake Placid, No. 8:22-

CV-00314 (BKS/DJS), 2023 WL 8573860, at *20 (N.D.N.Y. Dec. 11, 2023) (dismissing

the plaintiff's § 1983 claim against the private attorney-defendant with prejudice

because the plaintiff did not plausibly allege the defendant acted under the color of state

law or committed any constitutional violation); Braithwaite v. Collins, No. 22-CV-00161

(JS/AYS), 2023 WL 2350030, at *8 (E.D.N.Y. Mar. 3, 2023) (dismissing the plaintiff's

claims against his defense attorneys with prejudice and without leave to amend

because the "defendants are not state actors," the "[p]laintiff [has not] sufficiently

alleged that any of the[ d]efendants acted jointly with a state actor or conspired with a

state actor to deprive [the p]laintiff of some constitutional right," and the plaintiff's

"merely conclusory allegations with no supporting factual averments are insufficient to

state a [constitutional violation]"), appeal dismissed, No. 23-460, 2023 WL 6613144 (2d

Cir. Sept. 11, 2023); Randolph v. Suffolk Cnty. Dist. Attorney's Off., No. 21-CV-841

(KAM/LB), 2021 WL 1124603, at *3-4 (E.D.N.Y. Mar. 24, 2021) (dismissing the plaintiff's

§ 1983 claim with prejudice where the plaintiff failed to allege that his attorney was acting under the color of state law, and failed to establish that his attorney committed any constitutional violation).

Thus, it is recommended that plaintiff's complaint be dismissed with prejudice and without leave to amend, as any attempt to amend would be futile and unproductive. See Errato v. Seder, No. 3:22-CV-793 (SVN), 2023 WL 2743284, at *6 (D. Conn. Mar. 31, 2023) ("The law is clear.  In order to proceed under section 1983, a plaintiff must allege that the defendant either acted under color of state law or acted in concert with a state actor. Even affording Plaintiff the special solicitude afforded to pro se litigants, his . . . complaint does not include such allegations [and, thus, granting leave to amend] would [be] futile."), aff'd, No. 23-638, 2024 WL 726880 (2d Cir. Feb. 22, 2024) (summary order).

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application for leave to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's § 1983 and § 1985(3) claims against Ms. Walsh be **DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[9]

Dated:   June 4, 2024
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).